UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FILED

MAR 08 2019   DB

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN.

03 -19 - 0215

LARRY LEE HIMES               )      Case No.
                              )
Plaintiff,                    )
                              )
v.                            )
                              )
PROVIDENT LIFE AND ACCIDENT   )
INSURANCE COMPANY (a/k/a UNUM )
GROUP CORPORATION)            )
                              )
Defendant(s).                 )

---

COMPLAINT

Comes now the Plaintiff, Larry Lee Himes, who brings this action against Provident Life

and Accident Insurance Company (a/k/a Unum Group), hereinafter referred to as

"Unum", for violations of the Employee Retirement Income Security Act Of 1974, as

amended (ERISA); and in particular, without reservation U.S.C. 29 §§ 1001, et. seq. as

well as all pertinent regulations and the federal common law developed in the context

of ERISA. This count covers, without limitation, all causes of action that are available

under 29 U.S.C. § 1132(a)(1)(B). The Plaintiff seeks past disability benefits from the

time they were terminated by Unum, and the reinstatement of the Plaintiff's Unum

disability benefits.

1. Jurisdiction is based on the Employee Retirement Income Security Act of 1974, as

amended (ERISA) and 29 U.S.C. § 1132(e)(1) and § 1132(f).

(1)

2. Venue is proper in the Middle District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

3. Larry Lee Himes is a resident of Brentwood, Tennessee. Plaintiff is a Certified Public Accountant who was employed by Southwestern/Great American, Inc. in Nashville, Tennessee from 1985 to 1996. Plaintiff's title with the company at the time of his disability was Senior Accountant.

4. The Plaintiff has disability insurance with Unum (Policy # 06-337-7042009) that was purchased in 1990 through the benefit plan offered by his employer at that time, Southwestern/Great American, Inc.. The plan is an Employee Welfare Benefit Plan as defined in 29 U.S.C § 1002(1). Unum is administrator and/or fiduciary of the disability plan as defined by 29 U.S.C. §§ 1002(16) and (21).

5. The Plaintiff was originally diagnosed with non-Hodgkin's lymphoma in January 1994. The Plaintiff continued to work full-time while undergoing six months of chemotherapy which ended in July 1994.

6. The Plaintiff was still working full-time when he had a recurrence of his non-Hodgkin's lymphoma in September 1995. The Plaintiff began preliminary chemotherapy treatments in November 1995 that preceded the high-dose chemotherapy and stem cell transplant which he received in January 1996.

7. Due to the severity of the treatments, the Plaintiff was unable to return to work after the preliminary chemotherapy treatments began in November 1995. The Plaintiff continued to receive his salary from the company during a short-term disability elimination period that ended in January 1996. After receiving high-dose

(2)

chemotherapy and a stem cell transplant in January 1996, the Plaintiff then filed for and

began receiving Long-Term Disability benefits from Unum in February 1996.

8. The Plaintiff developed severe gastrointestinal problems and a severe sensitivity to

odors as a result of the high-dose chemotherapy and stem cell transplant he received in

January 1996. The Plaintiff continued to receive Long-Term Disability benefits from

Unum until they were terminated in August 1996. At that time, the Plaintiff applied for

and began receiving Social Security Disability benefits which were approved

retroactively to November 1995. The Plaintiff has continued to receive Social Security

Disability benefits, uninterrupted, to the present time.

9.The Plaintiff was seen and/or treated by numerous physicians in several different

fields of medicine from 1996 to 2007. That was done to try and resolve the chronic

and severe gastrointestinal issues, as well as the chronic and severe sensitivity to odors,

that the Plaintiff developed after his high-dose chemotherapy and stem cell transplant

in January 1996.

10. The Plaintiff appealed Unum's decision to terminate his Long-Term Disability

benefits several times from 1996 to 2003. Those appeals included statements from

three doctors that the Plaintiff was disabled, as well as detailed written testimony from

the Plaintiff concerning his extreme health problems that prevented him from returning

to work.

11. Unum continued to deny the Plaintiff's appeals for reinstatement of his disability

benefits despite receiving the additional evidence of his disability from 1996 to 2003,

and despite the fact he was awarded Social Security Disability benefits in 1996. The

Plaintiff received three denial letters from Unum just in the year 2003.

12. In 2004, Unum was sued by all 50 states of the United States, as well as The Department of Labor, for its unlawful claims assessment practices when reviewing disability claims. The lawsuit resulted in the Regulatory Settlement Agreement in which Unum agreed to reassess denied and terminated disability claims going back at least as far as 1997.

13. The Plaintiff's terminated Unum disability claim was reassessed in 2007 as part of the Regulatory Settlement Agreement process. Based on the same information that was available to Unum in 2003 when Unum refused to reinstate the Plaintiff's benefits three times, Unum reversed their 1996 decision to terminate the Plaintiff's Long-Term Disability benefits. Unum paid the Plaintiff disability benefits retroactive to the date they were terminated in 1996, plus interest. Unum also reinstated the Plaintiff's Long-Term Disability benefits going forward.

14. After reinstatement of the Plaintiff's Long-Term Disability benefits in 2007, Michelle Towle (Disability Benefits Coordinator) contacted the Plaintiff by a letter dated September 14, 2007 stating that the Plaintiff was required to provide annual Attending Physician Statements as ongoing proof of loss.

15. The Plaintiff responded to Ms. Towle by a letter dated September 21, 2007 and requested that Unum implement the waiver in his disability policy for physician care. The Plaintiff's letter states,

...You left out what I believe is the most relevant policy provision. That provision states "you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit

(4)

to you." Any objective third party would conclude that this provision has been met! If ten years of medical treatment and history is not sufficient to meet that provision, then that provision HAS NO MEANING!...

The Plaintiff made that request in 2007 because it had been more than 10 years since the Plaintiff's high-dose chemotherapy and stem cell transplant that caused his disabling conditions of severe and chronic gastrointestinal problems and odor sensitivity. Numerous physicians tried and failed to resolve those issues during that time. The disabling conditions the Plaintiff suffers from are subjective and not verifiable by medical tests. There was no reasonable basis for the Plaintiff to continue to visit physicians concerning those health problems after ten years without improvement.

16. In a letter dated October 11, 2007, Ms. Towle responded to the Plaintiff's letter dated September 21, 2007 that requested the waiver for physician care. Ms. Towle states in her letter,

We are in receipt of your letter dated September 21, 2007. After reviewing your most recent medical records, we have decided that we cannot completely waive the required annual Attending Physician Statement. We will however reduce the frequency to bi-annually at this time.

There is only one waiver contained in the Plaintiff's Unum disability policy. That waiver is for physician care. There is no provision in the Plaintiff's Unum disability policy for a reduction in the frequency of the Attending Physician Statement. Unum did not follow the waiver provision for physician care as stated in the policy. Also, by reducing the frequency of the Attending Physician Statement to bi-annually, Unum did not follow the provisions of the policy for proof of loss. The policy requires the Plaintiff to provide Unum with written proof of loss within 90 days, or no later than one year and 90 days if

(5)

legally able to do so, after each period for which Unum is liable.

17. In a letter dated October 22, 2007, the Plaintiff responded to Ms. Towle's October 11, 2007 letter that refused to implement the waiver for physician care. The Plaintiff's letter states,

I am in receipt of your letter dated October 11, 2007. I have also received the Claimant's Supplemental Statement and Attending Physician's Statement forms. It is a breach of Unum's contractual obligations stated in my policy to persist in this matter regarding the Attending Physician's Statement. In your latest letter you state, "After reviewing your most recent medical records, we have decided we cannot completely waive the required annual Attending Physicians Statement. We will however reduce the frequency to bi annually at this time.". Unum is again attempting to ignore the language in my policy which states Unum "WILL" waive this requirement when further treatment is of no benefit. My policy says NOTHING about reducing the frequency of this requirement! As I stated in my previous letter, Unum has ten years of medical records that PROVE further treatment would be of no benefit as everything has already been tried. As I also stated in my previous letter, I expect Unum to honor the waiver that is clearly stated in my policy and which has CLEARLY BEEN MET!

18. Despite the Plaintiff's request for the waiver of physician care as stated in the policy, Unum did not implement the policy waiver. Instead Unum reduced the frequency of their request for an Attending Physician Statement from the Plaintiff to bi-annual beginning in 2007. That action by Unum was not supported by the policy provisions.

19. The Plaintiff spoke with Ms. Towle by telephone in 2012. The Plaintiff again requested that Unum implement the waiver in his policy for physician care. That is documented by an internal Unum memo created by Ms. Towle on April 26, 2012. It had been 17 years at that time since the Plaintiff's high-dose chemotherapy and stem cell transplant, and the Plaintiff's disabling conditions had not changed. All efforts by medical professionals to resolve those conditions had failed.

(6)

20. As occurred in 2007, Unum again did not implement the waiver for physician care in 2012. Instead, Unum created a different waiver that is not in the Plaintiff's disability policy. The waiver that Unum created was for the requirement of an Attending Physician Statement from the Plaintiff. Ms. Towle communicated the waiver to the Plaintiff in a letter dated May 2, 2012 that states,

We are writing to tell you that we have made the decision to waive the periodic requirement for a completed Attending Physician Statement.

As was the case in 2007 when Unum reduced the frequency of the Attending Physician Statement, there is no provision in the Plaintiff's Unum disability policy to waive the requirement for an Attending Physician Statement. The only waiver in the Plaintiff's policy is for physician care. Also, by waiving the requirement for an Attending Physician Statement, Unum did not follow the provisions in the policy for proof of loss. The policy requires the Plaintiff to provide Unum with written proof of loss within 90 days, or no later than one year and 90 days if legally able to do so, after each period for which Unum is liable. Ms. Towle also states in her letter,

In relaxing the policy requirements regarding the periodic completion of the Attending Physician Statement, we are not waiving any of our rights under the policy, including the right to require completion of an Attending Physician Statement at a later date, if deemed necessary.

That language is not in the Plaintiff's Unum disability policy.

21. The Plaintiff spoke with Ms. Towle by telephone in May 2012 about the fact that Unum ignored the waiver language in his policy for physician care, and that Unum created a waiver that is not in his policy. That is documented by an internal Unum

(7)

memo created by Ms. Towle dated May 1 of 2012. That memo described the telephone conversation between the Plaintiff and Ms. Towle. In the memo, Ms. Towle states,

He said he had a comment regarding this and that we keep adding clauses to the policy that is not there.

22. As a result of the waiver Unum created in 2012, Unum did not request any Attending Physician Statements from the Plaintiff from 2012 to 2016. However, Unum states in a letter dated November 2, 2017 that they were requesting records from the Plaintiff's physicians annually during that period. Also, the Plaintiff was submitting his own annual Individual Disability Status reports to Unum during that period. Both the physicians' reports and the Plaintiff's reports received by Unum from 2012 to 2016 documented that the Plaintiff was not receiving active care by a physician. That was because all treatments had failed to resolve the Plaintiff's severe gastrointestinal problems and odor sensitivity, and continued care would be of no benefit to him. Unum continued to pay the Plaintiff's benefits from 2012 to 2016 even though the Plaintiff was not under the care of a physician. Despite Unum not implementing the waiver for physician care in 2012 as stated in the policy, Unum's handling of the Plaintiff's claim from 2012 to 2016 appeared to be consistent with the waiver of physician care.

23. On February 11, 2015, the definition for Total Disability in the Plaintiff's Unum disability policy changed due to the Plaintiff's 55th birthday. The policy states that after the Plaintiff's 55th birthday, the definition of Total Disability changes from "you are not able to perform the substantial and material duties of your occupation" to "you are not

(8)

able to engage in any gainful occupation in which you might reasonably be expected to engage because of education, training, or experience, with due regard to your vocation and earnings at the start of disability".

24. Supposedly due to the change in the definition of Total Disability as of the Plaintiff's 55th birthday, Unum requested additional information from the Plaintiff in August 2016. That was 18 months after the definition of Total Disability changed on the Plaintiff's 55th Birthday (February 11, 2015). It was also shortly after Unum sent the Plaintiff a letter dated May 31, 2016 from Michelle Towle (Benefits Center Coordinator) stating his disability was continuing.

25. In a letter dated August 12, 2016, Jennifer Farrell (Senior Disability Benefits Specialist) requested that the Plaintiff submit an Attending Physician Statement. In a letter dated August 15, 2016, Craig B. Ibarguen (Benefits Research and Investigation Representative) requested that the Plaintiff schedule an in-home meeting with a third-party Field Representative. The Plaintiff responded with a letter dated September 12, 2016 stating that his health conditions had not changed, and that there was nothing he could communicate to the Field Representative that was not already in his Unum claim file. The Plaintiff also stated that the request for an Attending Physician Statement from him had been waived by Unum in 2012. (Note: Meeting with a Field Representative is not mentioned in the Plaintiff's Unum disability policy. Also, in August 2016 the Plaintiff had been disabled for more than 20 years, and Unum was still ignoring the waiver in the Plaintiff's policy for physician care. That was despite the Plaintiff requesting in 2007 and 2012 that the waiver for physician care be implemented.)

(9)

26. In a letter dated September 12, 2016, Ms. Farrell repeated Unum's requests for an

Attending Physician Statement and a meeting with Unum's Field Representative. The

Plaintiff again responded with a letter dated September 29, 2016 stating that his health

conditions had not changed, that Unum had stated in a letter dated May 31, 2016 that

his disability was continuing, and that Unum had waived the request for an Attending

Physician Statement from the Plaintiff in 2012. The Plaintiff also quoted the only waiver

that exists in his Unum disability policy which states,

you are receiving care by a Physician which is appropriate for the condition causing the
disability. We will waive this requirement when continued care would be of no benefit
to you.

27. In a letter dated October 13, 2016, Ms. Farrell contacted the Plaintiff

and requested redundant information that Unum had received numerous times over

the past two decades. One of Ms. Farrell's requests was for authorization to receive the

Plaintiff's Social Security Disability file. The Plaintiff responded with a letter dated

October 30, 2016 stating that Social Security Disability is not mentioned in the Plaintiff's

Unum disability policy, and that the only relevance of Social Security Disability to Unum

regarding the Plaintiff's claim comes from the Regulatory Settlement Agreement of

2004. That agreement requires Unum to give significant weight to evidence of an award

of Social Security Disability benefits as confirming disability. It does not state that the

Plaintiff is required to provide Unum with an authorization to request the Plaintiff's

Social Security Disability file. In addition, Unum received the Plaintiff's Social Security

Disability file in 2007 during the reassessment process which contained all of the

information that exists in the file. Ms. Farrell also states in her letter,

(10)

In relaxing the policy requirements regarding the periodic completion of the Attending Physician Statement, we are not waiving any of our rights under the policy, including the right to require completion of an Attending Physician's Statement at a later date, if deemed necessary.

That language is not in the Plaintiff's Unum disability policy.

28. In a letter dated November 21, 2016, Ms. Farrell contacted the Plaintiff and states,

We obtained a copy of your Social Security file in August 2007. These records show that you were initially approved for Social Security disability benefits on January 23, 1997 with a primary diagnosis of malignant neoplasm of lymphoid and histiocytic tissue/Hodgkin's Disease. Your claim was re-evaluated by the Social Security Administration and on May 04, 2000 you were approved for ongoing disability with primary diagnosis of Somatoform disorders with a secondary diagnosis history of neoplasm of lymphoid and histiocytic tissue/Hodgkin's Disease. The Social Security Administration also indicated they would periodically review your claim for ongoing disability. However, without an updated Social Security Administration authorization, we are unable to contact the Social Security Administration to determine if further evaluations have been done since 2000 as they indicated and, if so, the outcome of their review.

29. There are two issues to address from Ms. Farrell's November 21, 2016 letter.

First, Somatoform Disorder is defined as physical symptoms that cannot be fully

explained by any underlying general medical or neurological condition. The diagnosis of

Somatoform Disorders was contradicted by the Plaintiff's medical diagnoses of severe

Irritable Bowel Syndrome and severe sensitivity to odors which resulted from his high-

dose chemotherapy and stem cell transplant treatments in 1996. Those conditions are

underlying general medical or neurological conditions that explain the Plaintiff's physical

symptoms. Also, Unum was aware of the diagnosis of Somatoform Disorders when

Unum reassessed the Plaintiff's claim in 2007 and reinstated his benefits. The Plaintiff

was not receiving any treatments for Somatoform Disorders in 2007 when Unum

reinstated the Plaintiff's disability benefits because all the treatments that were

(11)

attempted failed to resolve the Plaintiff's physical symptoms. The second issue to

address from Ms. Farrell's November 21, 2016 letter is her statement that the Social

Security Administration indicated in 2000 that they would periodically review the

Plaintiff's claim for ongoing disability. The Social Security Administration sent the

Plaintiff a letter dated June 9, 2004 that states,

We sent you a letter telling you that we were going to review your disability case.
However, we do not need to review your case at this time. Therefore, we will not
contact your doctor now....We will contact you later if we need to review your case.

Ms. Farrell failed to mention that letter in her statement about the Social Security

Administration's intentions to periodically review the Plaintiff's claim for ongoing

disability. That letter was in the Plaintiff's Unum disability file which was available to Ms.

Farrell.

30. In her letter dated November 21, 2016, Ms. Farrell also requested for the Plaintiff to

attend an Independent Medical Examination. Ms. Farrell attempted to justify her

request for an IME by misstating language in the Plaintiff's Unum disability policy. Ms.

Farrell's letter requesting an IME states,

Therefore, as stated in Physical Examinations provision, during an ongoing claim
evaluation, we have the right to have you examined by a physician of our choice at our
expense.

The Physical Examinations provision in the Plaintiff's Unum disability policy actually
states,

We, at our expense, have the right to have you examined as often as is reasonable while
a claim is pending.

The words "during an ongoing claim evaluation" and "by a physician of our choice" used

by Ms. Farrell to justify her request for an IME do not appear in the Plaintiff's

(12)

disability policy. Also, Ms. Farrell left out the words "as is reasonable while a claim is

pending" from her statement about the Physical Examinations provision in the policy.

31. In letters dated December 5 and 29 of 2016, the Plaintiff responded to Ms. Farrell's

request for an Independent Medical Examination and listed some of Ms.

Farrell's misstatements of the policy provisions. There was no acknowledgement by Ms.

Farrell of her misstatements when she responded to the Plaintiff in subsequent letters

except to acknowledge that Unum does not have the right to choose a physician "of our

choice" for an IME. Ms. Farrell's statements requesting the Plaintiff to attend an IME

were not supported by the provisions of the policy. Also, Ms. Farrell's request for an IME

was unreasonable considering the Plaintiff's health conditions are subjective and cannot

be verified by medical exams or tests.

32. Regarding the Physical Examinations provision in the policy that Ms. Farrell referred

to in her November 21, 2016 letter as a basis for requesting an Independent Medical

Examination, the policy specifically states that provision applies "while a claim is

pending". The Plaintiff had received disability benefits from Unum for more than twenty

years in November 2016 when he received Ms. Farrell's letter requesting an IME. The

Plaintiff expressed in two letters dated December 5 and 29 of 2016 to Ms. Farrell that

his claim was not pending.

33. In a letter dated December 13, 2016, Ms. Farrell contacted the Plaintiff again

concerning her request for authorization to obtain the Plaintiff's Social Security

Disability file. Ms. Farrell states in her letter,

(13)

Following the reassessment period, we agreed to give the decision made by Social Security significant weight. To do this, we need a completed written authorization to obtain a copy of their claim file. This allows us to review the documentation they used to arrive at their determination. However, if you do not/refuse to provide this authorization, we are not required to apply the Social Security weight/compelling evidence analysis in our ongoing evaluation.

34. In a letter dated December 29, 2016, the Plaintiff responded to Ms. Farrell's letter dated December 13, 2016. The Plaintiff's letter states that Unum received the Plaintiff's Social Security Disability file in 2007 which allowed Unum to review the documentation used by the Social Security Administration to arrive at their determination. Also, the Regulatory Settlement Agreement does not state that Unum has to be given authorization to obtain the Social Security Disability file in order to give significant weight to evidence of an award of SSDI benefits as supporting disability.

35. In a letter dated February 15, 2017, Ms. Farrell notified the Plaintiff that Unum had scheduled an Independent Medical Examination for March 21, 2017. That was done without the Plaintiff's knowledge or consent. The Plaintiff responded to Ms. Farrell in a letter dated February 17, 2017 which states,

My Unum disability policy does not require me to attend an Independent Medical Examination as there is no claim pending in my case.

36. In a letter dated March 6, 2017, Ms. Farrell contacted the Plaintiff stating,

Once initial liability is determined, a demonstrable ongoing loss (i.e. period of disability) is still required to establish continued entitlement to monthly benefits. For example, the policy requires ongoing Poof of Loss for a "continuing loss.

That exact language is not in the Plaintiff's Unum disability policy. Ms. Farrell combined selected words from the policy with Ms. Farrell's own words that are not found in the policy. Unum once again altered the policy language to serve Unum's own

(14)

interest. That was a recurring tactic used by Unum when communicating with the Plaintiff about his Unum disability policy provisions. Ms. Farrell also continued to ignore the waiver provision in the Plaintiff's policy for physician care, as well as Unum's 2012 waiver for the request of an Attending Physician Statement from the Plaintiff. Those issues are discussed in paragraphs 18 through 22 of this complaint.

37. Ms. Farrell's letter dated March 6, 2017 also omitted language in the policy when stating the proof of loss provisions. As an example, for an ongoing loss, the policy states that "you" must give written proof of loss. The "you" in the policy is referring to the Plaintiff. Ms. Farrell failed to mention that in her statements about the proof of loss policy provisions. That is critical because Unum had not received written proof of loss for an ongoing loss from the Plaintiff since at least 2012 when Unum waived the request for an Attending Physician Statement from the Plaintiff. The Plaintiff had only submitted his annual Individual Disability Status report to Unum since 2012, and Unum repeatedly stated in their letters to the Plaintiff beginning in 2016 that his statements concerning his disabling conditions did not qualify as proof of loss. Despite that, Unum continued to pay the Plaintiff's disability benefits from 2012 to 2016. Unum did not follow the provisions of the disability policy requiring written proof of loss from the Plaintiff during the period from 2012 to 2016.

38. Ms. Farrell's March 6, 2017 letter to the Plaintiff also quoted the Proof of Loss provision in the Plaintiff's Unum disability policy. The Proof of Loss provision states,

If the policy provides for periodic payment for a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable...In any event, the proof required must be furnished no later than one year after the 90 days unless you are legally unable to do so.

(15)

Unum did not receive written proof of loss from the Plaintiff from 2012 to 2016 but continued to pay his benefits. Furthermore, after the definition of Total Disability changed in February 2015, Unum did not even request written proof of loss from the Plaintiff until August 2016 which was beyond the one year and 90 days time limit stated in the policy. All of the above resulted from Unum waiving the requirement for an Attending Physician Statement from the Plaintiff in 2012.

39. In a letter dated March 15, 2017, the Plaintiff responded to Ms. Farrell's letter dated March 6, 2017 and discussed some of the issues related to proof of loss in his Unum disability policy.

40. In a letter dated March 21, 2017, Ms. Farrell contacted the Plaintiff stating Unum was awaiting the completion of the Independent Medical Examination scheduled on March 21, 2017. Unum had initially informed the Plaintiff about that IME in a letter dated February 15, 2017. That IME was scheduled without the Plaintiff's knowledge or consent. The Plaintiff had previously sent Unum a letter dated February 17, 2017 stating his Unum disability policy did not require him to attend an IME because there was no claim pending. The Plaintiff sent Unum a second letter dated March 26, 2017 again stating that his Unum disability policy did not require him to attend an IME because there was no claim pending in his case. At no time before or after the IME was scheduled did the plaintiff agree to attend.

41. In a letter dated March 27, 2017, Ms. Farrell contacted the Plaintiff stating,

Because you did not request that this examination be rescheduled prior to March 06, 2017 and you failed to attend the scheduled examination, your claim is now closed. We will not pay you beyond March 21, 2017, the date of your IME...In order for us to

(16)

consider additional benefit payments, you would need to undergo the IME in order for us to determine any restrictions and limitations you may have....if you attend an examination in the future, we will evaluate your claim for ongoing benefits once the IME is completed and reviewed...If you disagree with our decision, you have the right to request an appeal.

42. In a letter dated April 11, 2017, Ms. Farrell contacted the Plaintiff in a follow-up to

her benefits termination letter. Ms. Farrell states in the follow-up letter,

Even though you may continue to be eligible for Social Security Disability Income benefits, we have determined that you are not eligible for benefits under your Provident Life and Accident Insurance Company policy because you did not comply with your policy's requirement to attend an IME...If you disagree, please refer to the section of our March 27, 2017 letter titled Next Steps Available to You for an explanation of how to appeal the decision.

At no time did the Plaintiff agree to attend the Independent Medical Examination. The

Plaintiff notified Unum twice by letter that his policy did not require him to attend an

IME because no claim was pending.

43. After his benefits were terminated, the Plaintiff contacted his former oncologist, Dr.

Habib Doss, who had verified the Plaintiff's disability to Unum several times during the

previous 15 years. After the Plaintiff contacted him, Dr. Doss sent a letter dated May 17,

2017 to Unum that states,

This is a letter on behalf of Mr. Larry Himes who has a history of non-Hodgkin's lymphoma. He is post-transplant many years ago. This is to certify that he continues to have multiple symptoms making him disabled, including profound gastrointestinal symptoms and severe odor sensitivity related to chemotherapy, that make him unable to work, and making him fully disabled in my opinion.

Dr. Doss was the only specialist in the field of oncology, and the only

specialist experienced with using chemotherapy and stem cell transplants, that reported

to Unum about the Plaintiff's disabling health conditions after the termination of his

benefits in March 2017. Dr. Doss was also the Plaintiff's treating physician for many

(17)

years. The Regulatory Settlement Agreement requires Unum to give deference to the treating physician's opinion. Also, the Plaintiff's Unum disability policy does not give Unum the discretion to determine disability. Despite all of the above, Unum completely dismissed Dr Doss' expert opinion.

44. The Plaintiff chose to proceed with an administrative appeal of Unum's decision to terminate his benefits rather than attend an Independent Medical Examination for the following reasons: Unum continued to ignore the waiver of physician care as stated in the Plaintiff's Unum disability policy despite creating a wavier in 2012 for an Attending Physician Statement which is not in the policy; based on the information presented in this complaint which documents that Unum did not administer the Plaintiff's claim in accordance with the language of his Unum disability policy; the Plaintiff did not believe his Unum disability policy required him to attend an Independent Medical Examination because his claim was not pending; the Plaintiff's disabling conditions are subjective and not verifiable by a medical examination or tests which made Unum's request for an IME unreasonable.

45. The Plaintiff submitted his administrative appeal to Unum on June 19, 2017 as verified by the certified mail receipt.

46. The Plaintiff received a telephone call from Melissa A. Walsh (Lead Appeals Specialist) on July 18, 2017 to discuss his appeal. The Plaintiff and Ms. Walsh had a very long conversation (approximately 2-3 hours) discussing many aspects of the Plaintiff's claim and appeal. During the first part of the telephone conversation, the Plaintiff asked Ms. Walsh if she had read his appeal. Ms. Walsh's answer was "no". That was alarming

(18)

to the Plaintiff because Unum had received his appeal one month prior to Ms. Walsh

calling him. Ms. Walsh made statements and decisions about the Plaintiff's claim and

appeal during the telephone call without having reviewed either. For example, during

their conversation, Ms. Walsh informed the Plaintiff that in order to continue with the

appeal he would have to agree to attend an Independent Medical Examination. That

decision was made by Ms. Walsh without having reviewed the Plaintiff's file. The

Plaintiff stated that his disabling conditions were subjective and not verifiable by

medical exams or tests. The Plaintiff stated that attending an IME would only result in

the Plaintiff reiterating the same information to the examiner that Unum already had in

his file for decades. The Plaintiff stated he would only agree to attend an IME if there

was no way his benefits would be reinstated if he did not. Ms. Walsh confirmed that was

the case.

47. The Plaintiff and Ms. Walsh discussed how the Independent Medical Examination

would be handled during their July 18, 2017 telephone conversation. Ms. Walsh stated

that it had been inappropriate for The Benefit Center to schedule the original

Independent Medical Examination on March 21, 2017 with an Occupational Medicine

Specialist. Ms. Walsh stated because the Plaintiff's disabling conditions resulted from his

treatments for non-Hodgkin's lymphoma, an oncologist would be the appropriate

professional to perform the IME. Ms. Walsh stated she would schedule the IME with an

oncologist and contact the Plaintiff with the details.

48. In a letter dated July 31, 2017, Ms. Walsh contacted the Plaintiff. The letter was

described by Ms. Walsh as a "follow-up to our recent telephone conversation". In her

(19)

letter, Ms. Walsh repeated her statement from the telephone conversation that an

Independent Medical Examination would be required to further evaluate the Plaintiff's

appeal. Also, Ms. Walsh acknowledged receiving Dr. Doss' (the Plaintiff's former

oncologist) letter stating the Plaintiff is fully disabled. Ms. Walsh then states,

> However, he has not seen you in a number of years. Therefore, even if we contacted
> him, he would only be able to refer to his records from a number of years ago. While
> you have indicated nothing has changed in your condition, we have no records to
> validate this.

Ms. Walsh ignored the fact that Unum paid the Plaintiff's disability benefits for 10 years

after the 2007 reassessment process with no new medical records to validate the

Plaintiff's conditions. That was done because all treatments had failed to resolve the

Plaintiff's disabling conditions and continued care would be of no benefit to him. Ms.

Walsh ignored that Unum created a waiver in 2012 for the request of an Attending

Physician Statement from the Plaintiff because physicians had failed to resolve the

Plaintiff's disabling conditions over many years.

49. In her letter dated July 31, 2017, Ms. Walsh also states,

> We also understand your concern that meeting with an independent physician is
> "pointless". You believe you would only be reiterating to him what you have told us.

The history of the Plaintiff's claim for more than twenty years verifies that is indeed

the case. Ms. Walsh knew that the Plaintiff's disabling conditions are subjective and

cannot be verified by an Independent Medical Examination. Therefore, Ms. Walsh's

request for the Plaintiff to attend an Independent Medical Examination in September

2017 was unreasonable. That violated the Physical Examinations provision in the

Plaintiff's policy that states Unum can have the Plaintiff examined "as often as is

(20)

reasonable while a claim is pending".

50. In early August 2017, the Plaintiff received a telephone call from Ms. Walsh that informed the Plaintiff an Independent Medical Examination had been scheduled with an Occupational Medicine Specialist. The Plaintiff immediately questioned why the IME had been scheduled with an Occupational Medicine Specialist instead of an oncologist as Ms. Walsh had stated would be done in their initial telephone conversation. Ms. Walsh responded "I should not have said that". Ms. Walsh then attempted to justify why an Occupational Medicine Specialist would be the appropriate choice for the IME. Ms. Walsh stated that because the Plaintiff's cancer was in remission, an occupational medicine physician would be most appropriate to address the disabling conditions of severe gastrointestinal problems and odor sensitivity. Ms. Walsh ignored the fact that the Plaintiff has been in remission since 1996, and that his disabling conditions were caused by the cancer treatments in 1996. Ms. Walsh also ignored the fact that an oncologist experienced in using those treatments would be most qualified to evaluate the Plaintiff's health situation. The Plaintiff made it clear to Ms. Walsh during the telephone conversation that he did not agree with Unum's decision to have an occupational medicine physician perform the IME. The Plaintiff's Unum disability policy does not give Unum the right to choose the IME physician.

51. The Plaintiff was contacted by a letter dated August 8, 2017 from Ms. Walsh with the scheduling details of the Independent Medical Examination. The IME was scheduled with an Occupational Medical Specialist for September 27, 2017 despite the Plaintiff's

(21)

disagreement with that choice for an examiner.

52. In a letter dated August 22, 2017, the Plaintiff contacted Ms. Walsh and expressed his concerns about the way his claim and appeal had been handled by Unum. The Plaintiff described how Ms. Walsh had stated in their original telephone conversation on July 18, 2017 that an Independent Medical Examination scheduled by The Benefit Center with an Occupational Medicine Specialist for March 21, 2017 had been inappropriate. Ms. Walsh had stated the IME should be performed by an oncologist due to the facts of the Plaintiff's claim. The Plaintiff then questioned why Ms. Walsh scheduled an IME with an Occupational Medicine Specialist for September 27, 2017 when she stated in their initial telephone conversation that was inappropriate. The Plaintiff also expressed his concern that Ms. Walsh stated during their initial telephone conversation on July 18, 2017 that she had not read the Plaintiff's appeal, Despite that, Ms. Walsh had decided that an IME was necessary during the telephone conversation. The Plaintiff also requested that Unum reinstate his benefits without requiring him to attend an IME.

53. In a letter dated August 29, 2017, the Plaintiff was contacted by Ms. Walsh responding to the Plaintiff's letter dated August 22, 2017. Ms. Walsh states,

You brought up our initial telephone conversation and indicated I stated it was "inappropriate" for The Benefits Center to have an IME with an occupational medicine physician. First, I remind you that when we spoke I had yet to review your claim file. Second, I never indicated it was "inappropriate" for them to use an occupational medicine physician. I did question why they wanted you to be seen by an occupational medicine physician when your diagnosis was cancer. However, after reviewing your file in its entirety, it was clear that your cancer was in remission and the symptoms you were claiming to be impairing were stomach issues and sensitivity to odors. Therefore, an occupational medicine physician is most appropriate to address these conditions...

(22)

While we have an updated narrative from Dr. Doss, he has not
seen you in several years. Therefore he is merely advising us what you have told
him...The mere fact you state you have these conditions does not entitle you to
benefits... I wish to also point out that your policy requires you
to be receiving care by a physician which is appropriate for the condition causing
disability....The company could have denied your claim based on the sole fact that you
were not under physician care as required by the policy.

54. Ms. Walsh states in her letter dated August 29, 2017 that she had not reviewed the

Plaintiff's file before calling to discuss his appeal on July 18, 2017. Ms. Walsh also stated

to the Plaintiff during their July 18, 2017 telephone conversation that the Appeals

Division was totally separate and independent from The Benefits Center. Those two

statements are contradicted by the fact that Ms. Walsh decided during the July 18, 2017

telephone conversation that she agreed with The Benefit Center that an Independent

Medical Examination was necessary without having reviewed the Plaintiff's file. Ms.

Walsh did not make a fair and independent decision that an IME was necessary.

55. Ms. Walsh states in her letter dated August 29, 2017 that she never indicated it was

inappropriate for The Benefits Center to use an occupational medicine physician for the

Independent Medical Examination instead of an oncologist. However, Ms. Walsh's

statement is disproved when she states in the letter that she did question why The

Benefits Center wanted the Plaintiff to be seen by an occupational medicine physician

when his diagnosis was cancer. Also, Ms. Walsh ended the telephone conversation on

July 18, 2017 by stating to the Plaintiff that she intended to schedule the IME with an

oncologist. All of the above facts are a clear indication that Ms. Walsh did not perform

a fair initial evaluation of the Plaintiff's appeal because she made statements and

decisions that effected the appeal without having read it.

(23)

56. Ms. Walsh states in her letter dated August 29, 2017 that after reviewing the Plaintiff's entire file it was clear his cancer was in remission and his disabling conditions would be most appropriately addressed by an occupational medicine physician. If Ms. Walsh reviewed the entire file, she knew that the Plaintiff's cancer had been in remission since 1996. Ms. Walsh knew that the treatments the Plaintiff received for his cancer in 1996 caused his disabling conditions. Ms. Walsh knew that Unum had paid benefits to the Plaintiff for more than twenty years based on those disabling conditions. And, Ms. Walsh also knew that the Plaintiff's disabling conditions cannot be verified by medical examinations or tests, Based on the above facts, Ms. Walsh's conclusions that the Plaintiff should attend an Independent Medical Examination, and that it should be performed by an occupational medicine physician, were unreasonable.

57. Ms. Walsh states in her letter dated August 29, 2017 that the updated narrative received by Unum from Dr. Doss in May 2017 was him merely advising Unum what the Plaintiff had told him. Ms. Walsh also states that the mere fact the Plaintiff reports having these conditions does not entitle him to benefits. Ms. Walsh declaring that the Plaintiff's statements do not entitle him to benefits is not supported by the Regulatory Settlement Agreement which requires Unum to,

provide fair and reasonable evaluations considering all available medical and/or vocational evidence, both objective and subjective, both supporting impairment and supporting capacity.

If Ms. Walsh reviewed the Plaintiff's entire file, Ms. Walsh knew that the Plaintiff had received disability benefits from Unum for more than twenty years based on his self-reported health issues and symptoms. Ms. Walsh knew Unum reassessed the Plaintiff's

(24)

terminated claim in 2007 and reversed their 1996 termination decision based on the Plaintiff's testimony concerning his health issues. That was documented in Unum's 2007 letter explaining their decision which states,

...You state that you have continued to suffer the lingering effects of chemotherapy including gastrointestinal problems and odor sensitivity...

Ms. Walsh knew that Unum waived their request for an Attending Physician Statement from the Plaintiff in 2012 even though he had not been seen by any physician for several years. Ms. Walsh knew that Unum sent the Plaintiff a letter on May 31, 2016 stating his disability was continuing which was even longer since the Plaintiff had last been seen by any physician. Ms. Walsh also knew that the Regulatory Settlement Agreement states that regulators would monitor Unum's claim evaluation practices by examining claim files for evidence of reliance on lack of objective data, or objective medical information, as a basis for claim denial or termination of benefits. All of the above facts made Ms. Walsh's comment about Dr. Doss' May 2017 update as merely advising Unum what the Plaintiff had told him seem disingenuous, and it violated the Regulatory Settlement Agreement.

58. Ms. Walsh states in her letter dated August 29, 2017 that she wished to point out that the policy requires the Plaintiff to be receiving care by a physician which is appropriate for the condition causing disability. Ms. Walsh left out the rest of the definition for Total Disability in the Plaintiff's Unum disability policy which states "We will waive this requirement when continued care would be of no benefit to you". In 2012, Unum created a waiver for the request of an Attending Physician Statement from

(25)

the Plaintiff which is not in the policy. That was done to circumvent the waiver of

physician care which is in the policy. That is thoroughly discussed in paragraphs 14

through 22 of this complaint. Furthermore, Unum paid the Plaintiff's disability benefits

for many years while knowing he was not under the care of a physician because

continued care would be of no benefit to him.

59. Ms. Walsh states in her letter dated August 29, 2017,

You brought up our initial telephone conversation...I remind you that when we spoke I had yet to review your claim file...

Later in the same letter Ms. Walsh states,

You also raised concern about the fact that I had not reviewed your file when we first spoke... Mr. Himes, as I told you before, I had reviewed some of your file but not all of it.

Ms. Walsh reinforced the above contradiction in a letter dated September 11, 2017 by

stating,

Again, I had not reviewed your file and I made this abundantly clear during our telephone conversation.

That was an example of Ms. Walsh's contradictory statements made to the Plaintiff

while administering his appeal which resulted In the Plaintiff not receiving a fair review

of his appeal.

60. In a letter dated September 4, 2017, the Plaintiff responded to Ms. Walsh's August

29, 2017 letter. The Plaintiff again discussed Ms. Walsh's failure to read his appeal and

claim file before calling the Plaintiff to discuss them on July 18, 2017, and Ms. Walsh's

decision that an Independent Medical Examination was necessary prior to reviewing the

Plaintiff's file. The Plaintiff also discussed Ms. Walsh stating an occupational medicine

(26)

physician was not the appropriate choice for performing the IME, but then scheduling

the IME with one, anyway. The Plaintiff reiterated that his disabling conditions since

1996 have always been subjective and not verifiable by medical examinations or tests,

and that the Regulatory Settlement Agreement requires Unum to give fair and

reasonable evaluation to subjective evidence. The Plaintiff also reiterated instances

when Unum misstated the provisions of his policy and the facts of his claim. Finally, the

Plaintiff states that there is no reasonable basis for Unum to require him to attend an

Independent Medical Examination based on the facts of his claim.

61. In a letter dated September 11, 2017, Ms. Walsh responded to the Plaintiff's letter

dated September 4, 2017. Ms. Walsh confirmed the Plaintiff's assertion that Ms. Walsh

decided an Independent Medical Examination was necessary during her initial

telephone call with the Plaintiff on July 18, 2017 despite the fact Ms. Walsh had not

reviewed the Plaintiff's file. Ms. Walsh states in her letter,

Again, I had not reviewed your file and I made this abundantly clear during our
telephone conversation.

Ms. Walsh also gave credence to the Plaintiff's assertion that an oncologist was the

correct specialist to perform the IME instead of an Occupational Medicine Specialist.

Ms. Walsh states in her letter,

I have explained to you in detail why during our original telephone
conversation I questioned The Benefits decision to have you examined by an
occupational medicine physician rather than an oncologist...Without reviewing your file,
I thought you were claiming symptoms as the result of your cancer diagnosis. After a
review of your file, it was clear that while you were originally receiving benefits due to a
cancer diagnosis, your cancer had been in remission for quite some time. Your only
claimed symptoms are GI issues and a sensitivity to odors. Therefore, on appeal, we

(27)

have concluded the best physician to examine you is an occupational medicine physician.

Ms. Walsh ignored the fact that the Plaintiff's file clearly documents that the Plaintiff's cancer has been in remission since 1996, and that all of the Plaintiff's disabling conditions resulted from his treatments in 1996. The Plaintiff received disability benefits from Unum for more than 20 years for those same disabling conditions. As a result, an oncologist would obviously be the specialist who would be most familiar with the Plaintiff's circumstances, not an occupational medicine physician. Ms. Walsh also states in her letter that the Plaintiff's benefits were terminated on March 21, 2017 for breach of contract due to the Plaintiff not attending the Independent Medical Examination scheduled on March 21, 2017. Ms. Walsh states in the letter that there is another IME scheduled for the Plaintiff to attend on September 27, 2017.

62. In a letter dated September 19, 2017, The Plaintiff responded to Ms. Walsh's letter dated September 11, 2017. The Plaintiff expressed his disagreement with all of Ms. Walsh's responses including the assertion that the Plaintiff was in breach of contract for not attending the Independent Medical Examination scheduled on March 21, 2017. The IME in March 2017 was scheduled without the Plaintiff's knowledge or consent, and the Plaintiff's claim was not pending as required by the policy to request a physical examination. The Plaintiff indicated in his letter to Ms. Walsh that he planned to attend the IME scheduled for September 27, 2017 despite the Plaintiff's opinion that his Unum disability policy did not require him to attend. The Plaintiff also disagreed with an occupational medicine physician being chosen to perform the exam. The Plaintiff was told by Ms. Walsh that he had no choice but to attend the IME in order to complete the

(28)

administrative appeal process. Completing the administrative appeal was necessary before other legal remedies were available to the Plaintiff to have his Unum disability benefits reinstated.

63. The Plaintiff's Independent Medical Examination was scheduled for September 27, 2017 with Dr. Stephen Kent, M.D., who is a Board certified Occupational Medicine Specialist. The appointment was in Clarksville, TN which is approximately 75 miles from the Plaintiff's home in Brentwood, TN. The Plaintiff required his brother to drive him to the IME appointment because the Plaintiff rarely drives due to his disabling conditions.

64. The Plaintiff arrived for his Independent Medical Examination appointment on time and was told by the office staff that Dr. Kent would not be in that day. The office staff told the Plaintiff that Dr. Kent had rescheduled the appointment a week or more prior to the day it was scheduled. The office staff told the Plaintiff that the agency Unum used to schedule the appointment was supposed to notify Unum of the appointment change.

65. The Plaintiff immediately called Ms. Walsh from the Independent Medical Examination location to notify her that the physician was not at the appointment. The Plaintiff expressed his frustration to Ms. Walsh that his brother had taken the day off from work to drive the Plaintiff to the appointment, and that he and his brother had endured a 150 miles round trip drive for nothing. Ms. Walsh told the Plaintiff that she was not aware of the schedule change, and that if the Plaintiff did not stop talking she would hang up on him. The Plaintiff later filed a formal written complaint on December 14, 2017 with Unum's Customer Relations Department which documented that incident.

(29)

66. Ms. Walsh contacted the Plaintiff by telephone later in the day on September 27, 2017 to inform him that the Independent Medical Examination had been previously rescheduled for the next day (September 28, 2017) and inquired if the Plaintiff could return the following day to attend the IME. The Plaintiff agreed to attend the next day even though it required his brother to miss a second consecutive day of work to drive him to the appointment. Ms. Walsh stated that the Plaintiff's brother would be reimbursed for his mileage related to the initial appointment. Ms. Walsh later stated in writing to the Plaintiff numerous times over the next three months that the reimbursement had, or would, be made. Despite that, the Plaintiff never received reimbursement until January 2018 after filing a formal written complaint on December 14, 2017 with Unum's Customer Relations Department regarding the reimbursement.

67. The Plaintiff attended the Independent Medical Examination on September 28, 2017. The Plaintiff spent one hour discussing his disabling conditions with Dr. Kent, and answering Dr. Kent's questions. Dr. Kent made comments indicating he understood the severity of the cancer treatments the Plaintiff had received in 1996, and Dr. Kent stated three times during the appointment that the Plaintiff was lucky to be alive. The last thing Dr. Kent stated to the Plaintiff was "I think you have been pretty honest with me".

68. In a letter dated November 2, 2017, Ms. Walsh informed the Plaintiff that the decision to deny his benefits claim was correct. The letter states the Independent Medical Examination results did not support restrictions and limitations which met either of the definitions for Total Disability in the Plaintiff's Unum disability policy.

(30)

69. The Plaintiff requested a copy of the Independent Medical Examination report from

Unum, and the Plaintiff received a copy in November 2017.

70. The letter from Ms. Walsh dated November 2, 2017 confirming Unum's

benefits termination decision states that Dr. Kent,

...found your physical limitations were minimal. He did not believe you required any
limitations secondary to your physical symptoms from IBS and strong sensitivities to
smell.

The following are other quotes from Dr. Kent's IME report concerning the Plaintiff,

He did not seem histrionic or appear to be malingering. He did strongly advocate for
himself and had strong opinions about his health problems. I found customer to be
cooperative and forthcoming about underlying medical condition and physical abilities.
The physical findings on 9/28/17 are consistent with the medical problems identified in
medical records....Mr. Himes is very blessed to have survived his lymphoma diagnosis
and treatment with so few physical problems. It is however unfortunate he is
experiencing such debilitating symptoms triggered by GI activity and olfactory stimuli.

The quoted remarks from Dr. Kent's IME report in Ms. Walsh's letter are contradicted

by the above quoted remarks which are also from Dr. Kent's IME report.

71. Dr. Kent ultimately concluded in his report that the Plaintiff's debilitating symptoms

are primarily psychological. That can be explained in part due to Dr. Kent being provided

indisputable false information by Unum regarding the Plaintiff's health and claim

history.

72. The indisputable false information that Dr. Kent was provided by Unum was that the

Plaintiff did not complain of odor sensitivity until 2003, seven years after his high-dose

chemotherapy and stem cell transplant treatments. In the

Independent Medical Examination report, that false information apparently caused Dr.

Kent to reject the opinion of the Plaintiff's former oncologist, Dr. Doss, that the Plaintiff

(31)

is totally disabled due to physical problems that resulted from his cancer treatments. In

his IME report, Dr. Kent first states,

Dr. Doss on May 15, 2003 opined Mr. Himes suffered from severe sensitivity to odors secondary to high-dose chemotherapy causing nervous system damage and abdominal pain. He opined these two problems rendered Mr. Himes disabled and unable to work.

Dr. Kent then states the false information from Unum's reviewing physician, Dr. Nancy

Beecher M.D., which contradicts Dr. Doss' opinion. Dr Kent states,

Dr. Nancy Beecher MD notes on July 23, 2003 Mr. Himes medical records did not mention sensitivity to odors until March 2003, seven years after his high dose chemotherapy.

73. Dr. Beecher's statement about when the Plaintiff's severe sensitivity to odors began

was not only false, but Unum had retracted and apologized for that same

false statement in 2003. In Unum's letter to the Plaintiff from Louise B. Pons (Lead

Appeals Specialist) dated August 28, 2003, Ms. Pons states,

In reference to your concern that one of the physicians who reviewed your file erroneously commented that the available records did not mention any problems with sensitivity to odors until March 1999, we apologize for any distress this may have caused you. The physician in question had the opportunity to review your file on August 26, 2003 and she did note that there was mention in May 1997 of complaints of reaction to chemical smells dating back to January 1996, and then again in August 1997 of odor sensitivity causing some problems.

The above facts document that Unum provided the same false information

to Dr. Kent in 2017 that Unum had already retracted and apologized for in 2003. That

prevented the Plaintiff from receiving a fair evaluation of his appeal.

74. The Plaintiff sent letters to Dr. Kent and Ms. Walsh dated November 28, 2017 after

reading the false statement in the Independent Medical Examination report. The

Plaintiff clearly described the false information included in the IME report to both Dr.

(32)

Kent and Ms. Walsh, and the Plaintiff provided a copy of the 2003 Unum letter that

documented the false statement. The Plaintiff did not receive a response from Dr. Kent,

and there is no indication that Dr. Kent contacted Unum about the false statement as

the Plaintiff requested him to do.

75. The Plaintiff did receive a response from Ms. Walsh concerning the false information

in the Independent Medical Examination report. In a letter dated December 6, 2017,

Ms. Walsh states,

You indicated Dr. Kent, the IME provider, referenced a note from Dr.
Doss which stated you didn't report sensitivity to odors until 2003.

That was a blatantly false statement by Ms. Walsh. The Plaintiff's letter to Ms. Walsh

dated November 28, 2017 clearly states that It was Unum's physician, Dr. Nancy

Beecher, M.D., who made the false statement. In addition, the Plaintiff's letter directed

Ms. Walsh to page 158 of the administrative appeal to review a copy of Unum's 2003

letter that retracted and apologized for the false statement made by Dr. Beecher.

Despite that, Ms. Walsh inexplicably attributed the false statement to the Plaintiff's

former oncologist, Dr. Doss. That is another example of the Plaintiff not receiving a fair

and accurate review of his administrative appeal.

76. Ms. Walsh also states in her November 2, 2017 letter,

you are not receiving appropriate care by a physician which is required by your policy...
You believe your medical records from 1994-1996 clearly explain the status of your
medical condition. You believe your file supports medical conditions in 1994 and 1996
which is sufficient for the company to continue to provide benefits ongoing and to the
maximum benefit period of your claim. Mr. Himes, this is not how your policy works.
Your policy requires ongoing proof of loss. The approval of benefits for one period of
time in no way guarantees or obligates the company to providing benefits to the
maximum benefit period. You have been in breach of contract for not providing us with

(33)

proof of loss as required by the policy.

77. Ms. Walsh's statement in her letter dated November 2, 2017 concerning

the requirement for physician care ignored the waiver provision for physician care in the

Plaintiff's Unum disability policy. It also ignored the waiver by Unum in 2012 for an

Attending Physician Statement from the Plaintiff. All of the above is thoroughly

discussed in paragraphs 14 through 22 of this complaint.

78. Ms. Walsh's statements in her letter dated November 2, 2017 insinuating that the

Plaintiff had been in breach of contract since 1996 for not providing proof of loss are

contradicted by Unum's 2007 reassessment decision to reinstate the Plaintiff's benefits.

Ms. Walsh's statements are also contradicted by Unum not receiving written proof of

loss from the Plaintiff since at least 2012 after waiving the requirement for an Attending

Physician Statement as explained in paragraphs 37 and 38 of this complaint.

79. Ms. Walsh states in her letter dated November 2, 2017,

The Benefits Center reminded you of your policy's proof of loss provision and allowed
you time to obtain current medical treatment. Rather than going and seeing a physician
to document your symptoms of IBS and sensitivity to odors, you merely reiterate that
you had this issue following your chemo in 1996 and "nothing has changed".

Dr. Doss documented the Plaintiff's disabling conditions again in a letter dated May 17,

2017 which Unum totally dismissed. Furthermore, Ms. Walsh contradicted the need for

more documentation of the Plaintiff's symptoms by stating in her letter,

We understand Dr. Doss wrote a letter dated May 17, 2017 which indicated you could
not work due to gastrointestinal problems and severe odor sensitivity. However, his
letter was based on your self-report.

The Plaintiff's symptoms have always been subjective. Ms. Walsh suggested the Plaintiff

(34)

needed to have his symptoms documented, but then Ms. Walsh rejected the only

documentation that is possible with subjective symptoms which is self-report.

80. The Plaintiff filed a formal written complaint with Unum's Customer Relations

Department on December 14, 2017 concerning the handling of his claim and appeal. The

Plaintiff's formal complaint to Unum described some of the same issues contained in

this complaint. The Plaintiff's formal complaint was received by Nancy A. Mello (Senior

Complaints Specialist).

81. The formal complaint describes Ms. Walsh's contradictory statements to the

Plaintiff regarding their initial telephone conversation on July 18, 2017. The

contradictory statements are discussed in paragraph 59 of this complaint. In a letter to

the Plaintiff dated December 28, 2017 responding to the formal complaint, Ms. Mello

comments on Ms. Walsh's contradictory statements by stating,

"Ms. Walsh's statements are not contradictions."

That was a false statement, and it indicated the conflict of

interest exhibited by Unum in administering the Plaintiff's appeal.

82. The formal complaint described in detail the false information provided by Unum to

Dr. Kent who performed the Independent Medical Examination. The false information is

discussed in paragraphs 72 and 73 of this complaint. In Ms. Mello's letter to the Plaintiff

dated December 28, 2017 responding to the formal complaint, Ms. Mello failed to

mention the false information provided to the IME examiner by Unum. That indicated

the conflict of interest exhibited by Unum in administering the Plaintiff's appeal.

83. The formal complaint also described in detail the false response by Ms. Walsh to the

(35)

Plaintiff after she was notified about the false information provided to Dr. Kent by

Unum. That is discussed in paragraph 75 of this complaint. In Ms. Mello's letter to the

Plaintiff dated December 28, 2017 responding to the formal complaint, Ms. Mello failed

to mention the false response by Ms. Walsh. That indicated the conflict of interest

exhibited by Unum in administering the Plaintiff's appeal.

84. In an e-mail dated January 11, 2018, the Plaintiff responded to Ms. Mello's letter

dated December 28, 2017. The Plaintiff again detailed the false information that Unum

provided to Dr. Kent for the Independent Medical Examination. The Plaintiff also

detailed again the false response by Ms. Walsh to the false information provided to Dr.

Kent by Unum. Ms. Mello responded to the Plaintiff in a letter dated January 23, 2018,

and again Ms. Mello failed to mention the false information provided by Unum to Dr.

Kent, or Ms. Walsh's false response. The conflict of interest exhibited by Unum

concerning those issues clearly demonstrated Unum's bias in reviewing the Plaintiff's

appeal, and it prevented the Plaintiff from receiving a fair review and outcome of his

appeal.

85. In an e-mail dated February 4, 2018, the Plaintiff responded to Ms. Mello's January

23, 2018 letter. The Plaintiff challenged Ms. Mello on her refusal to address the false

information that Unum provided to Dr. Kent for the Independent Medical Examination,

or Ms. Walsh's false response.

86. In a letter dated February 15, 2018, Ms. Mello responded to the Plaintiff's e-mail

dated February 4, 2018. Ms. Mello once again did not mention the false information

provided to Dr. Kent by Unum for the Independent Medical Examination, or Ms. Walsh's

(36)

false response. That was the third time Ms. Mello refused to address those issues.

Again, that was a clear indication of the biased and unfair review of the Plaintiff's appeal

by Unum.

87. Also in her letter dated February 15, 2018 Ms. Mello states,

Per your request, and to be of service to you, Unum waived the "proof of loss" in the form of the Attending Physician Statement. This Statement would have provided us with information to support a continued disability.

Ms. Mello's statement was blatantly and demonstrably false. The Plaintiff could not

have requested a waiver of the Attending Physician Statement because there is no such

waiver in the policy. The Plaintiff requested the waiver of physician care as stated in his

disability policy on three separate occasions. The Plaintiff's first request was on

September 21, 2007 as described in paragraph 15 of this complaint. The Plaintiff's

second request was on October 11, 2007 as described in paragraph 17 of this

complaint. The Plaintiff's third request was in 2012 when the Plaintiff contacted

Michelle Towle (Benefits Center Coordinator) by telephone

to request implementation of the only waiver found in the Plaintiff's Unum

disability policy which is for physician care. Ms. Towle turned the Plaintiff's request for

the waiver of physician care into a waiver of the Attending Physician Statement to serve

Unum's own interest. That is documented by internal Unum memos dated April 26 and

May 1 of 2012. It is also discussed in paragraphs 19 through 21 of this complaint. In her

February 15, 2018 letter, Ms. Mello repeated the distortions of the Plaintiff's disability

policy and claim history that other Unum representatives had previously made. All of

the above indicates the conflict of interest exhibited by Unum in administering the

(37)

Plaintiff's claim and appeal.

88. Ms. Mello's statements in her February 15, 2018 letter that Unum waived proof of loss in the form of the Attending Physician Statement to oblige and be of service to the Plaintiff is contradicted by the fact that it would not have served the interest of the Plaintiff for Unum to waive the request of a document that would have provided support for continued disability. And, there is also no provision in the documents and instruments governing the plan for a waiver of the Attending Physician Statement. In addition, Ms. Mello's admission that Unum waived "proof of loss" in the form of the Attending Physician Statement demonstrated how willfully Unum changed the terms of the policy to serve Unum's own interest.

89. The Plaintiff also filed a formal complaint with the Tennessee Department of Commerce and Insurance regarding Unum's termination of the Plaintiff's disability benefits. In Ms. Mello's letter dated April 26, 2017 responding to the TDCI's inquiry, Ms. Mello states,

Although we advised Mr. Himes we were waiving the completion of an Attending Physician Statement, this did not absolve him of having to provide us with proof of loss when requested.

That language is not in the Plaintiff's Unum disability policy. The policy does not have a provision that waives the Attending Physician Statement, and the policy does not state that the Plaintiff has to provide proof of loss "when requested". That is another example of how willfully Unum changed the language of the Plaintiff's disability policy to serve Unum's own interest. The policy also does not state that a waived provision can be reinstated. The policy states very specific time requirements for

(38)

the Plaintiff to provide written proof of loss as discussed in paragraphs 37 and 38 of this complaint. Unum did not follow the time requirements for proof of loss as discussed in paragraph 37 and 38 of this complaint. Unum's avoidance of the physician care waiver in the policy by creating waivers that are not in the policy was a clear indication of Unum's conflict of interest in administering the Plaintiff's claim and appeal.

90. The Regulatory Settlement Agreement was agreed to by Unum in 2004. It requires Unum to fairly evaluate subjective evidence in confirming disability. It is enlightening to review Unum's explanation for refusing to reinstate the Plaintiff's disability benefits both before and after the Regulatory Settlement Agreement. In a letter to the Tennessee Department of Commerce and Insurance dated April 28, 1997, Lyn Caldwell (Training and Quality Assurance Representative) states,

...We advised that in order to service him within the parameters of his policy, it was necessary that objective evidence substantiating restrictions that prevented him from returning to work must be provided....

In a letter to the Plaintiff dated November 2, 2017, Melissa Walsh (Lead Appeals Specialist) states,

Claims are not paid based on an insured merely stating they have a medical condition. Such condition(s) must be supported by medical data, including, but not limited to, medical records, office notes, diagnostic testing, etc.

Both Ms. Caldwell's letter in 1997 and Ms. Walsh letter in 2017 requires the Plaintiff to provide objective evidence of disability. However, in 2007, after the Regulatory Settlement Agreement, Unum reinstated the Plaintiff's disability benefits without any objective evidence being provided to Unum. The Plaintiff's Unum disability policy does not mention objective evidence. And, the Regulatory Settlement Agreement requires

(39)

Unum to consider both subjective and objective evidence confirming disability. The Regulatory Settlement Agreement also states regulators would monitor Unum's claim evaluation practices by examining claim files for evidence of reliance on lack of objective data, or objective medical information, as a basis for claim denial or termination of benefits. By terminating the Plaintiff's benefits in 2017, Unum returned to their previous unfair practice of requiring the Plaintiff to provide only objective medical evidence to validate his disability claim. That violated the Regulatory Settlement Agreement, and it contradicted Unum's decisions related to the Plaintiff's claim since 2007.

91. The Plaintiff's Unum disability policy does not give Unum the discretion to determine disability.

92. Based on the evidence presented in this complaint, and any further evidence that might be included in the administrative record or uncovered during discovery, the Plaintiff was deprived of the Long-Term Disability benefits owed to him under the provisions of his Unum disability policy from the date his benefits were terminated on March 21, 2017 to the present. The Plaintiff has also been deprived of future Long-Term Disability benefits under the provisions of his Unum disability policy.

93. The Plaintiff asks the court to award Long-Term Disability benefits owed since the termination of Plaintiff's benefits on March 21, 2017, plus interest. The Plaintiff also asks the court to reinstate his Long-Term Disability benefits going forward under the terms of his Unum disability policy. The Plaintiff also asks the court to award any costs of action pursuant to U.S. Code § 1132(g)(1).

(40)

*Larry Lee Himes*

Larry Lee Himes

Larry Lee Himes
524 McKays Ct
Brentwood, TN 37027
(615) 377-3514
Leepy20012001@yahoo.com